RECEIVED
USDC, WESTERN DISTRICT OF LA.
TONY R. MOORE, CLERK
DATE 05/14/09
BY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| JERRY MATTHEWS, ET AL. | CIVIL ACTION NO. 07-1392 |
| VERSUS | JUDGE ROBERT G. JAMES |
| REMINGTON ARMS CO., INC., ET AL. | MAG. JUDGE KAREN L. HAYES |

## RULING

Pending before the Court are three motions in limine [Doc. Nos. 29, 30, & 31] filed by Defendant Remington Arms Co., Inc. ("Remington"). For the following reasons, the motions in limine are GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This is a products liability action arising out of a shooting accident involving Plaintiff Jerry Matthews ("Mr. Matthews") on October 26, 2006. Plaintiffs allege that when Mr. Matthews fired a Remington Model 710 rifle manufactured by Remington, the bolt was ejected into his eye and head, causing serious injury.

On August 22, 2007, Plaintiffs filed suit against Remington and other Defendants, alleging various products liability claims. [Doc. No. 1].

On February 20, 2009, Remington, the only remaining defendant, filed three motions in limine [Doc. Nos. 29, 30, & 31].

On March 9, 2009, Plaintiffs filed memorandums in opposition [Doc. Nos. 38, 39, & 40].

On April 15, 2009, Remington filed replies [Doc. Nos. 56, 58, & 60].

## II. LAW AND ANALYSIS

### A. Defendant's Motion in Limine No. 1–To Exclude the Testimony of Plaintiffs' Expert, Robert Block [Doc. No. 29]

Remington moves to exclude all or portions of Dr. Robert Block's ("Dr. Block") expert testimony regarding whether the rifle was defective. For the following reasons, the motion in limine is GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART.

#### 1. Qualification

Remington contends that Dr. Block is not qualified to offer expert testimony in the field of firearm design because Dr. Block is not a mechanical engineer and has not designed any firearms or component parts. Remington also relies on the fact that two courts have disqualified Dr. Block from offering opinions on firearm design.

Plaintiffs respond that Dr. Block is qualified to opine as to whether the rifle was defectively designed based on (1) his education in metallurgic engineering, (2) his experience teaching engineering and mechanical design and safety, (3) his work as a principal investigator for the U.S. Air Force on the design and function of mechanical components used in military aviation, (4) his experience studying the design of firearms, and (5) his forty-five years of experience as a consultant for manufacturers of firearms and ammunition in cases involving mechanical failure. Plaintiffs also rely on the fact that several courts, including the United States Court of Appeals for the Fifth Circuit, have qualified Dr. Block to give expert testimony on firearm design. *See, e.g., Miles v. Olin*, 922 F.2d 1221, 1229 (5th Cir. 1991) (holding that "Dr. Block's credentials to testify as an expert mechanical design engineer and metallurgist were well established" in a firearm products liability case).

2

The Court finds that Dr. Block is qualified to give an opinion regarding whether the rifle is defective in design. Dr. Block's extensive experience as a consultant in cases involving firearm mechanical failures makes him qualified to render an opinion on the possible defects in the rifle at issue. *See id.*; *see also Stotts v. Heckler & Koch*, 299 F. Supp. 2d 814, 827 (W.D. Tenn. 2004). Remington's motion in limine is DENIED IN PART.

### 2. Cumulative

Remington contends that Dr. Block's opinion is cumulative of the expert opinion to be offered by Plaintiffs' other expert, John T. Butters ("Butters"). *See* FED. R. EVID. 403.

Plaintiffs respond that, although their opinions overlap, Dr. Block and Butters intend to offer differing alternative designs.

Testimony that is otherwise admissible under Rule 702 should be excluded under Rule 403 if the probative value of the testimony is substantially outweighed "by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id.*

Both experts agree on the cause of the accident and the adequacy of the warnings in the owner manual. The Court finds that testimony by both experts on these issues would be needlessly cumulative, and GRANTS Remington's motion in limine IN PART. Because it is unclear at this time which expert will testify first, whichever expert testifies second is limited to concurring in the cause of the accident and adequacy of the warnings.

The Court also finds, however, that the expert testimony regarding the feasibility of alternative designs is not cumulative. Butters opines that the following alternative designs were feasible: a permanently assembled bolt structure, a "Mauser type firing pin intercept system," or a "bolt head assembly pin held in place by a roll pin." Dr. Block opines that the following alternative

3

design was feasible: "a spline or key that engaged a mating spline or key in the forward end of the Bolt Body[;] turning the Bolt Body would have turned the Bolt Head as long as the two were mated, independent of whether the Bolt Assembly Pin was in place." Because the feasibility of an alternative design is an element of the design defect claim, the Court will permit Plaintiffs' experts to offer opinions on different alternative designs. *See* LA. REV. STAT. § 9:2800.56. Remington's motion in limine is DENIED IN PART.

### 3. Untimely Disclosure

Remington moves to exclude Dr. Block's testimony regarding an alternative design that Dr. Block has actually produced and fabricated. Remington contends that this opinion or the basis of this opinion was not timely disclosed.

The basis and opinions of an expert are required to be timely disclosed and supplemented. *See* FED. R. CIV. P. 26(a)(2), (e)(2). An expert report may be supplemented up until the pretrial disclosure deadline. *See* FED. R. CIV. P. 26(e)(2) ("Any additions or changes to [the] information [in the expert's report or deposition] must be disclosed."). However, an expert report that contains *new* opinions based on information available prior to the expiration of the expert report deadline is not supplemental. *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546 (5th Cir. 1996) (stating that the purpose of supplemental expert report is to supplement—not to extend—the expert report deadline); *see also Lampe Berger USA v. Scentier, Inc.*, 04-354-C-M2, 2008 U.S. Dist. LEXIS 60648, at *6–7 (M.D. La. Aug. 8, 2008). If a party fails to timely disclose expert opinions, the Court may impose a variety of sanctions. *See* FED. R. CIV. P. 37(c)(1)(A).

Per the Court's scheduling order, Plaintiffs' expert report was due by December 1, 2008 [Doc. No. 24]; according to Remington, the report containing Dr. Block's opinion regarding the

4

actual construction of an alternative design was not disclosed until March 5, 2009, well after the expert report deadline. Remington raised this issue in its reply, so the Court does not have the benefit of Plaintiffs' response. The Court DEFERS ruling on this issue and ORDERS the parties to file supplemental memoranda within 15 days of the date of this Ruling and Order regarding whether the March 5, 2009 expert report (1) is a new or supplemental expert report, and (2) whether Plaintiffs' counsel should be sanctioned.

### B. Defendant's Motion in Limine No. 2–To Exclude Evidence as to Any Alleged Inadequacies in the Model 710 Owner's Manual [Doc. No. 30]

Remington moves to exclude evidence or testimony regarding the alleged inadequacies in the rifle's owner manual and/or the content of owner manuals published by other firearms manufacturers. Remington contends that this evidence is irrelevant because it is undisputed that Mr. Matthews did not receive or read the owner manual before the accident and, therefore, cannot establish a causal connection between the alleged inadequacies in the owner manual and his injuries. *See Bloxom v. Bloxom*, 512 So.2d 839, 850 (La. 1987), *superceded by statute*, LA. REV. STAT. § 9:2800.51, *et seq.*

Plaintiffs offer a variety of reasons why this evidence is admissible and relevant to their failure to warn and design defect claims and as rebuttal evidence to Remington's anticipated arguments.

For the following reasons, the Court DEFERS ruling on the motion in limine until trial, but offers the following analysis to assist the parties.

With respect to the failure to warn claim, the Court finds that Plaintiffs cannot rely on the alleged inadequacies in the owner manual to meet their proximate cause burden—there is no

evidence that Mr. Matthews read the owner manual, failed to appreciate some hazard or risk, and was injured as a result. *Cf.* LA. REV. STAT. §§ 9:2800.54(A), .57(A). Because Mr. Matthews did not read the owner manual, the only way Plaintiffs can show that Remington breached its duty to warn is to show that an additional warning was needed (on the product) because of the likelihood that a user would not consult or be in possession of the owner manual. *See, e.g., Delery v. Prudential Ins. Co. of Am.*, 94-CA-0352 (La. App. 4 Cir. Sept. 29, 1994); 643 So. 2d 807, 814 (holding that the manufacturer breached its duty to warn based on evidence that the warning on the bottom of the chair was not likely to be seen by a user of the chair and that the warning in the sales brochure was not forwarded to the user of the chair).

On the other hand, if Remington offers the defense that the warnings in the owner manual were adequate, then Plaintiffs are permitted to counter that argument. In sum, Plaintiffs cannot rely on the inadequacy of the warnings in the owner manual in their case-in-chief, but can use this evidence to rebut Remington's defense.

The Court also finds that the content—but not the adequacy—of the warnings in the owner manual may be relevant to whether the danger is foreseeable, whether an ordinary user would appreciate the danger, and whether the user's conduct was reasonable (assuming that Plaintiffs can lay a foundation at trial that it is appropriate to make these inferences from the content of an owner manual).

With respect to the design defect claim, the warnings are relevant to the design defect claim only if Remington argues that the likelihood of damage was low because the owner manual adequately warned the user about the danger. *See* LA. REV. STAT. § 9:2800.56(2) ("An adequate warning about a product shall be considered in evaluating the likelihood of damage when the

manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product."); *see also White v. Black & Decker (U.S.) Inc.*, 03-0874, 2004 U.S. Dist. LEXIS 11233, at *28–29 (E.D. La. June 15, 2004) (holding that the warnings significantly reduced the likelihood and gravity of damage).

Plaintiffs also argue that "[i]f Remington is allowed to speculate that some unknown person surreptitiously disassembled and misassembled the gun's bolt assembly. . ., then Plaintiffs should be allowed to show that the instructions provided in the owner's manual—ostensibly the only way a person can figure out how to disassemble the bolt—are inadequate." If Remington argues that the cause of the accident was misassembly **and** that misassembly would not have occurred if the instructions in the owner manual had been followed, then Plaintiffs can challenge the adequacy of the warnings/instructions regarding reassembly. However, the causal connection between misassembly and the instructions in the owner manual appears to be attenuated at this time.

Finally, Plaintiffs contend that the content of other manufacturers' owner manuals are relevant to show the feasibility of alternative designs, that misassembly is reasonably foreseeable, and that there is no utility in the design of the rifle's bolt assembly.

Other owner manuals are relevant to the feasibility of alternative designs, assuming that the manuals adequately depict the designs and Plaintiffs offer expert testimony regarding feasibility. The manuals are also relevant to whether misassembly is foreseeable to the extent that the manuals include warnings regarding misassembly and concern similar rifles/bolt assemblies. However, Plaintiffs fail to explain how the owner manuals are relevant to the utility of the design of the bolt assembly.

The Court will use the foregoing analysis to rule on these issues at trial.

## C. Defendant's Motion in Limine No. 3–to Exclude Evidence of Other Incidents Involving Other Rifles [Doc. No. 31]

Remington moves to exclude evidence of (1) customer incident records relating to alleged explosions of the Remington Model 710 rifle and (2) three lawsuits arising out of accidents with the Mossberg ATR-100 bolt-action rifle. For the following reasons, the Court DEFERS ruling on the motion in limine until trial.

### 1. Model 710 Accidents

Remington argues that written customer incident records that it produced relating to alleged explosions of Model 710 rifles would likely consist of written letters to Remington and are, therefore, inadmissible hearsay. *See* FED. R. EVID. 801. Remington also argues that the accidents are inadmissible because there is no evidence that they are substantially similar to the accident in this case. *See* FED. R. EVID. 401, 402. Finally, Remington argues this evidence should be excluded to prevent a series of mini trials to determine whether each accident was caused by a product defect. *See* FED. R. EVID. 403.

Plaintiffs request that the Court defer ruling on the admissibility of the accidents until after their expert, Butters, has testified.

Neither party provided the Court with evidence of the other Model 710 accidents. The Court, therefore, cannot issue a ruling at this time, but offers the following analysis to assist the parties.

With respect to the hearsay objection, written incident reports prepared by Remington are admissible hearsay under the business record exception, assuming a proper foundation is laid at trial. *See* FED. R. EVID. 803(6). Letters or complaints written by customers are not admissible as business records and are, therefore, inadmissible hearsay.

8

Plaintiffs must also show that the other accidents are substantially similar to the instant case. *See Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 381 (5th Cir. 1989). "Evidence of similar accidents might be relevant to the defendant's notice, magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation." *Ramos v. Liberty Mut. Ins. Co.*, 615 F.2d 334, 338–39 (5th Cir. 1980). The proponent of similar accident evidence must demonstrate a "close" degree of similarity when the evidence is offered to show the existence of a dangerous condition or defect. *Johnson v. Ford Motor Co.*, 988 F.2d 573, 579 (5th Cir. 1993). Even if the requisite degree of similarity is established, the evidence may be excluded under Federal Rule of Evidence 403. *Id.*

Remington contends the accidents are not substantially similar to this case because Butters testified that he could not determine whether the other accidents were caused by a missing or broken assembly pin, Plaintiffs' defect theory in this case. In response, Plaintiffs state that Butters' testimony was based on vague incident reports. After Butters testified, Plaintiffs state that Remington produced additional incident reports. Because the recent incident reports are not before the Court, the Court cannot determine at this time whether the accidents are substantially similar and/or prejudicial.

### 2. Mossberg Accidents

Remington contends the Mossberg ATR-100 bolt-action rifle accidents are not substantially similar and are, therefore, irrelevant and/or unduly prejudicial. *See* FED. R. EVID. 401, 402, 403.

Plaintiffs make several arguments regarding why these accidents are admissible. First, Plaintiffs argue that in each accident, the rifle was fired out-of-battery, with a missing or non-functioning bolt assembly pin, and resulted in a backwards expulsion of the bolt. For support,

9

Plaintiffs have offered expert testimony that the Mossberg bolt assembly is virtually identical to that of the Remington Model 710 and that a missing pin on the Mossberg rifle would cause the same type of bolt expulsion observed in this case. Second, Plaintiffs argue that they should be allowed to show that the Mossberg design is dangerous/defective if Remington relies on the Mossberg rifle design to show that the design of the Model 710 is "state of the art." Finally, Plaintiffs contend that their expert, Butters, should be permitted to testify about the Mossberg accidents as a basis for his opinions relative to the defects in the Remington Model 710 rifle, even if the accidents are not otherwise admissible. *See* FED. R. EVID. 703.

With respect to whether the Mossberg accidents are independently relevant, the only evidence offered by the parties is an excerpt from Butters' testimony in the *Cottherhill* lawsuit and the first page of the complaints in the *Cotterhill*, *Rider*, and *Monette* lawsuits. In the *Cottherhill* lawsuit, Butters testified that he did not have sufficient information at that time to conclude whether the bolt assembly pin malfunctioned.[1] He also testified that the *Rider* lawsuit was a "twin case." Plaintiffs have provided no support for their contention that each accident was caused by a missing or malfunctioning bolt assembly pin. Therefore, the Court cannot determine at this time whether Plaintiffs will be able to meet their burden of showing a close degree of similarity between the Mossberg accidents and the accident in this case.

With respect to whether the accidents are admissible rebuttal evidence, if Remington argues that the design of the Model 710 bolt assembly is safe based on its similarity to the design of the

---

[1] Butters testified that "I believe the preponderance of the evidence supports a release at the rear of the bolt tube rather than at the front. Now, if it is established by a [sic] further factual discovery that it did not separate first at the rear and that the separation at the rear is consequential, then that leaves only one place for a problem to have taken place, and that is up at the bolt head assembly pin." [Doc. No. 58-2, 94:6–13].

10

Mossberg ATR-100 bolt-action rifle, then Remington has opened the door to this evidence.

Finally, Rule 703 provides that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted." FED. R. EVID. 703. In Butters' expert report, he states his opinion that the Model 710 bolt assembly is defective is "supported by the fact that I have had occasion to examine a rifle with identical independent bolt head design features that suffered a broken bolt head assembly pin and that ejected its bolt upon firing in the same way that the subject Remington Model 710 ejected its bolt." [Doc. No. 29-2, ¶6].

The Court assumes *arguendo* that this statement refers to the Mossberg ATR-100 bolt-action rifle and related accidents. Even if Plaintiffs can lay the proper foundation under Rule 703, the Court is concerned that Plaintiffs are attempting to circumvent the substantial similarity requirement. Further, under Rule 703, Plaintiffs would still have to show that Butters can offer a reliable opinion regarding the cause of the Mossberg accidents. If Plaintiffs are able to do so, then the accidents will probably be independently relevant and admissible.

The Court will use the foregoing analysis to rule on these issues at trial.

### III. CONCLUSION

For the foregoing reasons, the motions in limine [Doc. Nos. 29, 30, & 31] are GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART.

"Defendant's Motion in Limine No. 1–To Exclude the Testimony of Plaintiffs' Expert, Robert Block" [Doc. No. 29] is GRANTED IN PART, DENIED IN PART, and DEFERRED IN

PART. The parties are ORDERED to file memoranda within 15 days of the date of this Ruling and Order regarding whether the March 5, 2009 expert report (1) is a new or supplemental expert report, and (2) whether Plaintiffs' counsel should be sanctioned.

"Defendant's Motion in Limine No. 2–To Exclude Evidence as to Any Alleged Inadequacies in the Model 710 Owner's Manual" [Doc. No. 30] and "Defendant's Motion in Limine No. 3–to Exclude Evidence of Other Incidents Involving Other Rifles" [Doc. No. 31] are DEFERRED.

MONROE, LOUISIANA, this 2 day of May, 2009.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE