RECEIVED
USDC, WESTERN DISTRICT OF LA.
TONY R. MOORE, CLERK
DATE 9/16/09
BY DD

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| JERRY MATTHEWS, ET AL. | CIVIL ACTION NO. 07-1392 |
| VERSUS | JUDGE ROBERT G. JAMES |
| REMINGTON ARMS CO., INC., ET AL. | MAG. JUDGE KAREN L. HAYES |

OPINION

Plaintiffs Jerry and Angie Matthews ("Mr. and Mrs. Matthews") brought suit against Defendant Remington Arms Co., Inc. ("Remington") under the Louisiana Products Liability Act ("LPLA"), LA. REV. STAT. § 9:2800.51, *et seq.* Mr. and Mrs. Matthews allege that when Mr. Matthews fired a Model 710 rifle ("the rifle") manufactured by Remington, the bolt was ejected into his eye and head, causing serious injury. Mr. and Mrs. Matthews allege that Remington is liable for their damages because the rifle was unreasonably dangerous in construction and design and lacked an adequate warning.

A bench trial was held in this matter on June 1–3, 2009.

I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court hereby enters the following findings of fact and conclusions of law. To the extent that any finding of fact constitutes a conclusion of law, the Court hereby adopts it as such, and to the extent that any conclusion of law constitutes a finding of fact, the Court hereby adopts it as such.

A. FINDINGS OF FACT

1. The Model 710 Rifle

In 2000, Remington introduced the Model 710 rifle. The Model 710 is a bolt-action rifle with a two-piece bolt assembly. The bolt head is fixed to the bolt body with a bolt assembly pin. If the bolt assembly pin is installed and the bolt handle rotated downward into the closed position, then the locking lugs will engage and lock the bolt head into position for firing. If the bolt head is locked into

position when the gun is fired, the explosion will be directed out of the barrel. If the bolt assembly pin is not installed, even though the bolt handle has been rotated downward into the closed position, the bolt head will not lock into position, and will be "out-of-battery." When the rifle is fired out of battery, the user will experience one of two things when the trigger is pulled: (1) a misfire, i.e., failure of the firing pin to strike the primer and ignite the gunpowder in the ammunition, or (2) if the ammunition is ignited, an uncontained explosion.

The owner's manual instructs the user to disassemble the bolt assembly for cleaning. Disassembly includes removing the bolt assembly pin. The owner's manual then instructs the user to reassemble the bolt head to the bolt body and to insert the bolt assembly pin. Remington instructs its assembly workers to keep their finger underneath the hole on the bolt body to prevent the pin from falling out when assembling the bolt head to the bolt body, but this instruction is not included in the owner's manual.

From the time of the introduction of the Model 710 rifle to the present, Remington has sold over 500,000 rifles. Other than this case, Remington has received no reports from customers, or any other source, of anyone attempting to fire a Model 710 rifle without a properly installed bolt assembly pin. Remington has, however, sold 145 bolt assembly pins since the Model 710 was introduced.

### 2. The Accident

The rifle at issue in this case was manufactured on September 26, 2001. At the time the rifle left Remington's control, it contained a bolt assembly pin manufactured to specifications.

Margaret Minchew ("Ms. Minchew"), Mr. Matthews' mother-in-law, purchased the rifle from a private party in 2006. Mr. Matthews had previously shot the rifle without incident, as had several other family members and friends. At some point prior to the accident, however, someone disassembled the bolt assembly and failed to reinstall the bolt assembly pin.

On the morning of October 29, 2006, Mr. Matthews borrowed the rifle from Ms. Minchew. The gun was in the possession of Ms. Minchew's daughter, Amanda Minchew Brooks ("Ms. Brooks"), and Ms. Brooks' then-boyfriend, Nick Glass ("Mr. Glass"). The rifle was inside Ms. Brooks and Mr. Glass' house, which was next door to Mr. and Mrs. Matthews' house.

When Mr. Matthews got the rifle, the bolt handle appeared to be closed.

After Mr. Matthews got the rifle, he went to his house to get ammunition. Mr. Matthews then went to another neighbor's house to target shoot and "sight" the rifle.

To prepare the rifle for target shooting, Mr. Matthews opened the bolt handle and pulled the bolt handle backwards to load the ammunition. Once Mr. Matthews loaded the ammunition, he pushed the bolt handle forward and rotated the bolt handle downward into what appeared to be the closed position. When he pulled the trigger, he experienced a misfire or a failure to fire. He pulled the bolt handle backwards and removed the ammunition. Mr. Matthews noticed nothing wrong with the ammunition. He then reloaded the ammunition, pushed the bolt handle forward, and rotated the bolt handle downward into what appeared to be the closed position.

When Mr. Matthews pulled the trigger a second time, the rifle exploded and portions of the bolt assembly were ejected into his eye and head. At the time of the accident, the bolt handle was rotated downward, but the locking lugs were not engaged and the rifle was thus out of battery. The Court finds that the locking lugs did not engage because the bolt assembly pin was not installed.

Immediately after the accident, Mr. Matthews ran across the street to Mrs. Matthews. He was driven to a hospital in Columbia, Louisiana, and then air-lifted to LSU Medical Center in Shreveport, Louisiana.

Mrs. Matthews was driven to Shreveport. En route, Mrs. Matthews spoke with Louisiana Wildlife & Fisheries Officer Gary Watts ("Officer Watts") by telephone regarding the accident. In

3

Officer Watts' report, he wrote that "Matthews['] wife Angie Matthews stated her husband was target practicing with a [].270 caliber rifle knowing that the bolt on rifle would not lock in place." [Exh. 1]. Mr. and Mrs. Matthews testified to the contrary. However, Mrs. Matthews admitted that Officer Watts' report was otherwise accurate.

As a result of the accident, Mr. Matthews sustained serious injuries to his eye and head and ultimately lost his right eye.

Neither Mr. nor Mrs. Matthews received or read the owner's manual prior to the accident.

## B. CONCLUSIONS OF LAW

Mr. and Mrs. Matthews allege that the rifle was unreasonably dangerous in construction and design and lacked an adequate warning. Mr. and Mrs. Matthews also contend that the accident was caused either by a broken/defective bolt assembly pin or by the absence of a bolt assembly pin.

> To maintain a successful products liability action under the LPLA, a plaintiff must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product 'unreasonably dangerous'; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

*Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 260–61 (5th Cir. 2002) (citing LA. REV. STAT. § 9:2800.54(A)).

The plaintiff bears the burden of proof on the foregoing elements by a preponderance of the evidence. LA. REV. STAT. § 9:2800.54(D). "The existence of each of these elements is a question of fact or of mixed fact and policy to be decided by the [factfinder] based upon the evidence and circumstances presented by the particular case." *Ellis v. Weasler Eng'g, Inc.*, 258 F.3d 326, 332 (5th Cir. 2001).

A product can be unreasonably dangerous in construction or composition, in design, by lacking

4

an adequate warning, or by failing to conform to an express warranty. LA. REV. STAT. § 9:2800.54(B)(1)–(4). However, "[i]f a plaintiff's damages did not arise from a reasonably anticipated use of the product, then the 'unreasonably dangerous' question need not be reached." *Kampen v. Am. Isuzu Motors, Inc.*, 157 F.3d 306, 309 (5th Cir. 1998) (en banc).

Mr. and Mrs. Matthews contend that operation of the rifle in an out-of-battery condition was a reasonably anticipated use of the rifle because the rifle appeared to operate normally and because misassembly, or failure to reinstall the bolt assembly pin, was foreseeable.[1] Remington contends that Mr. Matthews knew that the rifle was not safe to operate because he knew the bolt would not lock.

"'Reasonably anticipated use' means a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." LA. REV. STAT. § 9:2800.53(7). "'Reasonably anticipated use' is a more restrictive term of art than the pre-LPLA version, 'normal use,' and it does not suggest manufacturer liability for every conceivable or foreseeable use of its product." *Savant v. Beretta USA Corp.*, 05-1501, 2007 U.S. Dist. LEXIS 25548, at *8–9 (W.D. La. Apr. 4, 2007) (citing *Delphen v. Dept. of Transp. & Dev.*, 94-CA-1261 (La. App. 4 Cir. 5/24/95); 657 So. 2d 328, 333; *London v. MAC Corp. of Am.*, 44 F.3d 316, 318–19 (5th Cir. 1995); *Kampen*, 157 F.3d at 309–12). "This is especially true when the danger presented by the consumer's misuse should have been obvious to the consumer, whether experienced or ordinary." *Id.* at *12 (citing *Frith v. John Deere Co.*, 955 F.Supp. 663 (W.D. La. 1996)). "The standard for determining reasonably anticipated use is objective. Furthermore, it is from the point of view of the manufacturer at the time of manufacture." *Sturlese v. Six Chuter, Inc.*, 2001-1634 (La.

---

[1] Mr. and Mrs. Matthews also contend that use of the rifle with a defective bolt assembly pin was reasonably anticipated. However, for the reasons stated *infra*, the Court finds that the accident was caused by the absence of a bolt assembly pin. Therefore, the Court need not address this alternative argument.

App. 3 Cir. 6/26/02); 822 So. 2d 173, 180 n.4.

The parties have vigorously debated whether Mr. Matthews knew that the "bolt would not lock" prior to the accident and whether he fired the rifle in an obviously dangerous condition. *See Delphen*, 657 So. 2d at 334 ("Considering the obvious danger posed by the sophisticated bicycle, the fact that [the plaintiff] rode the bicycle across the . . . drawbridge without obtaining additional instructions regarding the bicycle's proper use and knowing that the wheel previously had become loose, was not a reasonably anticipated use of the product."). The Court concludes that, if Mr. Matthews stated that the "bolt would not lock," he meant that he had difficulty operating the action of the rifle, i.e., difficultly operating the bolt handle. The Court further concludes that Mr. Matthews was able to rotate the bolt handle into what appeared to be the closed position prior to pulling the trigger. The Court finds that both he and an ordinary user would have assumed that the rifle was safe to fire at that point, even if the bolt handle had previously been difficult to operate. Accordingly, the Court does not find that Mr. Matthews' use of the rifle was obviously dangerous.

This conclusion, however, does not end the Court's inquiry. Mr. and Mrs. Matthews bear the burden of showing that Remington should have anticipated that an ordinary user would fire the rifle in its altered condition. For the following reasons, the Court finds that Mr. Matthews' use of the rifle in an out-of-battery condition was not reasonably anticipated.

The Court is not persuaded that the customer complaints about injuries caused by other types of misassembled rifles prior to the manufacture of the Model 710 were related to missing bolt assembly pins or would otherwise have put Remington on notice of a similar danger. At the time of manufacture, there were no prior reports of users firing or attempting to fire such rifles without a properly installed bolt assembly pin, and evidence regarding the **post-manufacture** sale of replacement bolt assembly pins for the Model 710 rifle is irrelevant to the question of reasonably

6

anticipated use.

Remington anticipated that a user would disassemble the Model 710 bolt assembly for cleaning and remove the bolt assembly pin, but Mr. and Mrs. Matthews have not presented persuasive evidence that Remington also should have anticipated that users would fail to reinstall the bolt assembly pin. Both lay and expert witnesses testified that an ordinary firearm user knows and understands that reassembly of a firearm with all its parts is critical to safe operation. The Court, therefore, finds that Remington was entitled to expect that an ordinary user would reassemble the rifle with all its parts, absent special circumstances not present in this case.

Based on these findings, the Court need not address the remaining elements of Mr. and Mrs. Matthews' product liability claims.

## II. CONCLUSION

For the foregoing reasons, the Court finds in favor of Remington and against Mr. and Mrs. Matthews.

MONROE, LOUISIANA, this __15__ day of September, 2009.

```
                                    ROBERT G. JAMES
                              UNITED STATES DISTRICT JUDGE
```