United States Court of Appeals
Fifth Circuit

# UNITED STATES COURT OF APPEALS

# FILED
May 18, 2011

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JUN 1 3 2011

TONY R. MOORE, CLERK
BY _____
DEPUTY

# FOR THE FIFTH CIRCUIT

Lyle W. Cayce
Clerk

No. 09-31217

D.C. Docket No. 3:07-CV-1392

JERRY MATTHEWS; ANGIE MATTHEWS,

Plaintiffs - Appellants

v.

REMINGTON ARMS COMPANY INC.,

Defendant - Appellee

Appeal from the United States District Court for the
Western District of Louisiana, Monroe

Before BARKSDALE, DENNIS, and HAYNES, Circuit Judges.

## JUDGMENT

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that plaintiffs-appellants pay to defendant-appellee the costs on appeal to be taxed by the Clerk of this Court.

DENNIS, Circuit Judge, dissents.

ISSUED AS MANDATE:  0 9 JUN 2011

A True Copy
Attest       0 9 JUN 2011

Clerk, U.S. Court of Appeals, Fifth Circuit

By: _____
Deputy

New Orleans, Louisiana

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 18, 2011

No. 09-31217

Lyle W. Cayce
Clerk

JERRY MATTHEWS; ANGIE MATTHEWS,

Plaintiffs - Appellants

v.

REMINGTON ARMS COMPANY, INC.,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana

Before BARKSDALE, DENNIS, and HAYNES, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Following a bench trial, judgment was rendered against Jerry Matthews'
claim under the Louisiana Products Liability Act (LPLA), LA. REV. STAT. ANN.
§§ 9:2800.51–.59 (1988), for his injuries that resulted from his firing a
Remington Model 710 rifle.  When Matthews fired it, the bolt head, which was
designed to be connected to the bolt body by a bolt-assembly pin, did not lock
with the barrel, allowing an uncontained explosion.

At issue are the district court's findings that:  the bolt-assembly pin was
missing, rather than out-of-specification, when Matthews fired the rifle; and,
pursuant to LPLA, manufacturer Remington Arms Company, Inc., did not

"reasonably anticipate" a user would fire its rifle after someone had removed, but failed to reinstall, that pin. Concerning that reasonably-anticipated-use finding, primarily at issue is whether the district court erred by concluding that, for purposes of LPLA, the scope of Matthews' "use" of the rifle included such removal and failure to reinstall; that is, whether his "use" was firing the rifle with the bolt-assembly pin missing, as opposed to only firing it. AFFIRMED.

I.

Following the bench trial in June 2009, the district court rendered findings of fact and conclusions of law. *See Matthews v. Remington Arms Co.*, No. 07-1392, 2009 WL 2970441, at *1 (W.D. La. 16 Sept. 2009). The only contested finding is that, prior to Matthews' firing the rifle, the bolt-assembly pin had been removed but not reinstalled, as opposed to its' being in the rifle but out-of-specification or not functioning.

In 2000, Remington introduced its Model 710 bolt-action rifle. Instead of using a solid bolt, that model was manufactured with a two-piece bolt assembly: the bolt head is attached to the bolt body with a bolt-assembly pin. The bolt handle is attached to the bolt body. When the bolt handle and, therefore, the bolt body, is rotated downward, the bolt head (if the bolt-assembly pin is installed) simultaneously rotates downward and locks the "lugs" on the bolt head into the mating locking recesses in the receiving barrel interface (rifle receiver): the firing position. In such an instance, the rifle is "in battery". Only when the rifle is in battery will it fire properly.

The bolt-assembly pin, a cylinder, is not of insignificant size; it is .685" long and .247" in diameter. It is made from low-strength, unhardened steel. The pin is essential to the simultaneous downward rotation of the bolt head and body. If the bolt-assembly pin is missing or malfunctioning, it is possible for the bolt handle and body to be rotated into locked position without the bolt head also rotating into locked position. In that situation, the lugs on the bolt head will not lock into the mating locking recesses in the rifle receiver, resulting in inadequate

2

engagement between the bolt-head lugs and their locking recesses. In this situation, the rifle is "out of battery". If the trigger is pulled while a round is chambered and the rifle is out of battery, the rifle will either misfire or, as happened to Matthews, have an uncontained explosion.

Under normal conditions (in battery), the bolt-assembly pin does not contain the pressure from the cartridge's being fired; the bolt head contains the pressure with the seal that is created when the locking lugs are engaged with their mating recesses in the rifle receiver—that engagement is critical to pressure containment. Accordingly, the rifle can be fired without the pin in place *if* the bolt head is locked in place—the pin is not the critical pressure containment device.

The Model 710's owner's manual instructs users to disassemble the bolt assembly, including removing the bolt-assembly pin, for cleaning; and to reassemble the bolt assembly, by reinserting the bolt-assembly pin. Remington also instructs its factory assembly workers to keep a finger beneath the bolt-assembly-pin hole on the bolt body to prevent the bolt-assembly pin from falling out during assembly; however, this instruction is not included in the owner's manual. The owner's manual does not include any warnings of potential hazards if the bolt-assembly pin is not properly installed. Matthews, who borrowed, instead of owned, the rifle, testified he neither received, nor read, the owner's manual prior to the accident.

As of this action's being filed in August 2007, Remington had sold nearly 500,000 Model 710 rifles; but, it had not received a report of a user firing a Model 710 rifle without an installed bolt-assembly pin. Following the district court's ruling in favor of Remington in September 2009, however, Matthews moved unsuccessfully, pursuant to Federal Rule of Civil Procedure 60, for a new trial or to have the judgment altered or amended, based on newly discovered evidence of an October 2008 incident for which a Remington customer reported to Remington that his Model 770 rifle (part of the Model 710 series and also

3

employing a two-piece bolt assembly) came apart when he tried to open the bolt to eject a cartridge. The district court ruled that this newly discovered evidence did not change the trial result and would not have provided Remington with notice of any problem when the rifle fired by Matthews was manufactured in September 2001. *Matthews v. Remington Arms Co.*, No. 07-1392, 2009 WL 4456318, at *3 (W.D. La. 23 Nov. 2009).

When the rifle fired by Matthews left Remington's control in 2001, it contained a bolt-assembly pin manufactured to specifications. Matthews' mother-in-law, Margaret Minchew, purchased the rifle from her nephew in 2006. It had been owned by several persons before she purchased it; but, when she acquired it, she did not receive the owner's manual.

Before the date of the accident, Matthews and others fired the rifle without incident; but, prior to Matthews' accident, someone disassembled the rifle and the bolt assembly and failed to reinstall the bolt-assembly pin. (As noted *supra*, this critical finding of fact by the district court is contested by Matthews; he maintains that, when he fired the rifle, the bolt-assembly pin was either defective or malfunctioning, rather than missing.)

Approximately two to four weeks before the accident, Margaret Minchew loaned the rifle to her daughter, Amanda Minchew. She and the man with whom she was living, Nicholas Glass, lived next door to Matthews and his wife, another of Margaret Minchew's daughters.

Matthews borrowed the rifle from Amanda Minchew on the morning of the accident in October 2006; the bolt handle appeared to be closed. Matthews took the rifle to his house to obtain ammunition, and then proceeded to another's to "sight" the scope that had been installed recently on the rifle by Nicholas Glass.

In preparing to fire the rifle, Matthews rotated the bolt handle upward; pulled it back in order to load a shell; loaded it; pushed the bolt handle forward; and rotated it downward into what appeared to be the closed position. When he pulled the trigger, the shell did not fire (misfired). He again rotated the bolt

4

handle; pulled it back slowly (because he knew there could be compression); and removed the shell. Observing nothing wrong with the shell, Matthews reloaded a shell; pushed the bolt handle forward; rotated it downward into what appeared to be the closed position; and pulled the trigger. The rifle fired. Upon its doing so, an uncontained explosion occurred, sending portions of the bolt assembly into Matthews' head, causing serious injuries, including the loss of an eye.

The accident resulted from the absence of the bolt-assembly pin: the bolt handle and body had rotated downward, but the bolt head had not. Therefore, the locking lugs on the bolt head failed to engage the locking mating recesses in the rifle receiver, and the rifle was out of battery. Matthews knew it would be dangerous to fire the rifle if either the bolt-assembly pin was missing or the bolt handle was not closing properly.

In district court, Matthews contended, *inter alia*: firing the rifle out of battery (due to the absence of the bolt-assembly pin) was a "reasonably anticipated use" under LPLA because the rifle appeared to operate normally and a failure to reinstall the bolt-assembly pin was foreseeable to Remington; and the rifle was "unreasonably dangerous" in construction and design and lacked an adequate warning. Remington disputed this and also contended, *inter alia*, that Matthews' use of the rifle was "obviously dangerous", claiming he knew the bolt would not close properly prior to firing the rifle.

The district court's findings of fact were, *inter alia*: Matthews' use of the rifle was not "obviously dangerous"; "[a]t some point prior to the accident, however, *someone* disassembled the bolt assembly and failed to reinstall the bolt assembly pin"; and his using it in an "out of battery" condition—the bolt-assembly pin missing—was not "reasonably anticipated" by Remington. *Matthews*, 2009 WL 2970441, at *2-4 (emphasis added). Concerning the latter finding, the court concluded that, absent special circumstances not present in this action, Remington was entitled to expect an ordinary user to reassemble the rifle with all its parts, including the bolt-assembly pin. *Id.* at *4. Having found

5

no "reasonably anticipated use", which, as discussed *infra*, is the threshold LPLA element, the district court ruled in favor of Remington and declined to address the remaining LPLA elements at issue. *Id.*

In denying Matthews' motion for a new trial, and in regard to the bolt-assembly pin, the district court found: trial evidence established that the pin was not defective, but was removed prior to the accident; and "Remington's expert testified that the bolt assembly pin was manufactured to specifications and that the accident was caused by a missing, not broken, bolt assembly pin". *Matthews*, 2009 WL 4456318, at *2.

## II.

Louisiana law controls for this diversity action. *See generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products". LA. REV. STAT. ANN. § 9:2800.52. A claimant under LPLA must prove: (1) "damage proximately caused by a characteristic of the product that renders [it] unreasonably dangerous when such damage arose from a reasonably anticipated use of the product *by the claimant or another person or entity*"; (2) the product was "unreasonably dangerous" either in construction, design, or warning; and (3) the characteristic rendering the product unreasonably dangerous either "exist[ed] at the time the product left the control of its manufacturer or result[ed] from a reasonably anticipated alteration or modification of the product" (depending on the type of defect claimed). *Id.* at § 9:2800.54 (emphasis added).[1]

---

[1] Section 9:2800.54 provides:

> A. The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.
> B. A product is unreasonably dangerous if and only if:
> (1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;

Because "reasonably anticipated use" is the threshold LPLA element, and the district court limited its analysis to that element, our review does not reach whether the rifle is "unreasonably dangerous" because, *inter alia*, its design permitted it to be fired with the bolt-assembly pin missing—out of battery. The LPLA section at issue provides: "The manufacturer of a product shall be liable to a claimant for damage proximately caused by a *characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product* by the claimant or another person or entity". LA. REV. STAT. ANN. § 9:2800.54(A) (emphasis added). "The availability of an alternative design is relevant only if the user was engaged in a 'reasonably anticipated use' of the product, for unless that threshold element is satisfied, a manufacturer does not have a legal duty to design its product to prevent such use." *Butz v. Lynch*, 762 So. 2d 1214, 1217-18 (La. App. 1st Cir. 2000); *see also Kampen v. Am. Isuzu Motors*, 157 F.3d 306, 309 (5th Cir. 1998) (en banc) ("If a plaintiff's damages did not arise from a reasonably anticipated use of the product, then the 'unreasonably dangerous' question need not be reached.") (citing *Johnson v. Black & Decker U.S., Inc.*, 701 So. 2d 1360, 1366 (La. App. 2d Cir. 1997)). Accordingly, our analysis is limited to the question of reasonably anticipated use.

---

(2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;

(3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or

(4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.

C. The characteristic of the product that renders it unreasonably dangerous under R.S. 9:2800.55 must exist at the time the product left the control of its manufacturer. The characteristic of the product that renders it unreasonably dangerous under R.S. 9:2800.56 or 9:2800.57 must exist at the time the product left the control of its manufacturer or result from a reasonably anticipated alteration or modification of the product.

7

As noted, Remington maintained in district court that Matthews' use of the rifle was obviously dangerous, asserting he knew, prior to the accident, that the bolt would not close properly. Insofar as Remington makes this contention here, it has failed to adequately brief, and has, therefore, waived, it. *E.g.*, *Proctor & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004) ("Failure adequately to brief an issue on appeal constitutes waiver of that argument."); FED. R. APP. P. 28(a)(9)(A). The same failure-to-brief waiver applies insofar as Matthews contends the district court erred for any rulings on motions *in limine*, including by not considering evidence of other incidents of claimed out of battery firings.

Bench-trial findings of fact are reviewed for clear error; legal conclusions, *de novo*. *E.g.*, *Kleinman v. City of San Marcos*, 597 F.3d 323, 325 (5th Cir. 2010). A question of statutory interpretation is, of course, reviewed *de novo*. *E.g.*, *Great Am. Ins. Co. v. AFS/IBEX Fin. Servs., Inc.*, 612 F.3d 800, 809 (5th Cir. 2010). The establishment of each LPLA element is a question of fact, reviewed for clear error. *Ellis v. Weasler Eng'g, Inc.*, 258 F.3d 326, 331-32 (5th Cir. 2001); *Johnson*, 701 So. 2d at 1363 (each product liability case is resolved primarily on its own particular facts). A finding of fact is clearly erroneous only if, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed". *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see, e.g., Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 622 (5th Cir. 2005).

Therefore, at issue are whether the district court clearly erred by finding that: when Matthews fired the rifle, the bolt-assembly pin was missing, rather than out-of-specification; and such "use" should *not* have been "reasonably anticipated" by Remington. Regarding that use, at issue is whether the court erred in concluding that it was *not* merely firing the rifle, but firing it after someone had removed, and failed to reinstall, the bolt-assembly pin. "'Reasonably anticipated use' means a use or handling of a product that the

8

product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." LA. REV. STAT. ANN. § 9:2800.53(7).

## A.

Concerning the district court's finding of fact that the bolt-assembly pin was *not* in the rifle when Matthews fired it on the date of the accident, the rifle had been fired by numerous persons, including Matthews, after Margaret Minchew purchased it. Four witnesses (not including Matthews) who had fired the rifle denied disassembling it. Matthews was not asked whether he had done so. In addition, not all the persons who fired the rifle, after Margaret Minchew purchased it, testified. Moreover, there was no physical evidence to suggest the pin was present during firing.

Matthews maintains the district court clearly erred by finding the bolt-assembly pin was missing at the time of injury, rather than out of specification or not functioning as designed. In that regard, both sides' expert witnesses conceded either scenario (pin missing or out of specification) was *possible* because there was no direct evidence that the pin was out of specification or not functioning, due to the fact that, following the accident, neither the pin nor any remnant of it was found. Remington's expert testified it was more likely that the pin was missing; Matthews', it was more likely that the pin was out of specification.

The district court found: "[a]t some point prior to the accident, . . . someone disassembled the bolt assembly and failed to reinstall the bolt assembly pin", *Matthews*, 2009 WL 2970441, at *2; "the locking lugs did not engage because the bolt assembly pin was not installed", *id.*; and, "the accident was caused by the absence of [the] . . . pin", *id.* at *3 n.1. Based on our review of the evidence, including for the reasons that follow, we can not say that these findings of fact were clearly erroneous.

Although Matthews' expert opined that the accident occurred because the bolt-assembly pin was out of specification, as opposed to its not being installed

when the rifle was fired, Remington's expert testified that, during extensive testing, no bolt-assembly pins failed or broke, and he was not aware of any doing so post-manufacture. Moreover, there was no evidence inconsistent with the bolt-assembly pin's having been removed and not reinstalled. Remington's expert opined that the bolt-assembly pin was neither out of specification nor broken. In that regard, there was no evidence any bolt-assembly pin in the Model 710 rifle had been too short.

Before the accident, Remington had never been advised that a bolt-assembly pin was missing, and there was no evidence any Model 710 rifle had left Remington with the pin missing. Along that line, every Remington Model 710 rifle is test fired before it is sold. Based on markings on the holes in the bolt body for the rifle Matthews fired, the bolt-assembly pin had been in the rifle's bolt assembly. While these markings indicated a bolt-assembly pin had been in place, there was no distortion or damage to the holes in the bolt body revealing any unusual force had been applied to the pin. Remington's expert opined that the pin was in the rifle when it left Remington and not in it on the date of the accident because it had been removed.

After the rifle was purchased by Margaret Minchew, it had been fired at least approximately ten to 15 times. Numerous persons had fired it. Matthews testified that he had shot that rifle more than once prior to the accident. (And, therefore, had operated the rifle's bolt action.) Matthews also testified he would not shoot a rifle that had been disassembled and reassembled without all its parts. In short, as Remington's expert testified, the rifle had a functioning bolt-assembly pin when fired prior to the date of the accident. Moreover, not everyone who fired the rifle post-purchase by Margaret Minchew testified at trial; and she kept it readily accessible in a gun rack before loaning it to her daughter Amanda Minchew, approximately two to four weeks before the accident. (As noted, Nicholas Glass and Amanda Minchew lived next door to Matthews and his wife, another of Margaret Minchew's daughters.) Amanda

10

Minchew and Nicholas Glass testified that they did not fire the rifle after it was loaned to Amanda Minchew. On the other hand, Nicholas Glass changed the scope on the rifle.

Again, no one admitted to disassembling the rifle. But, as noted, not all who fired it post-purchase by Margaret Minchew testified. Matthews' expert testified: if the rifle is disassembled and then reassembled, the person who did so should function test the bolt mechanism; and, if that test is performed and the bolt-assembly pin is missing, the bolt should come out of the rifle's bolt assembly into that person's hand. On the other hand, one of Remington's experts testified, in response to a question by the court, that, if the pin is missing, but the bolt is pulled back very slowly, the bolt possibly would *not* react in that fashion. Matthews testified that, after the misfire, he pulled the bolt back slowly.

Regarding the district court's finding the bolt-assembly pin was missing, instructive are the earlier-described reasons provided in the November 2009 order denying Matthews' new-trial motion: "Evidence at trial established that the assembly pin was not defective, but was removed. Remington's expert testified that the bolt assembly pin was manufactured to specifications and that the accident was caused by a missing, not broken, bolt assembly pin". *Matthews*, 2009 WL 4456318, at *2. It goes without saying that the district court is in a "superior position to appraise and weigh the evidence". *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123 (1969); FED. R. CIV. P. 52(a)(6) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility.").

There were numerous instances for which the district court had to appraise and weigh the evidence and judge witnesses' credibility. For example, Nicholas Glass, who lived with Margaret Minchew's daughter Amanda Minchew on the date of the accident, was asked on cross-examination whether Margaret Minchew gave the rifle to him (it appears instead to have been loaned to

11

Amanda Minchew) because Margaret Minchew was concerned that the young son (about age 13 on the date of the accident) of the man with whom she lived "had been messing with" the rifle. Glass answered instead that the rifle was given to him because Margaret Minchew was concerned that the young person would shoot one of her horses with it. Remington then read for impeachment purposes the portion of Glass' deposition in which he had testified that Margaret Minchew gave the rifle to him because she was concerned that the young person "had been messing with the gun". Glass admitted he had so testified in his deposition.

Other examples of pertinent, conflicting evidence are whether Glass had fired the rifle (he denied doing so; Amanda Minchew testified on cross-examination that he had, after testifying on direct that he had not); whether Glass told Matthews on the day of the accident that he (Glass) had changed the scope on the rifle and it needed to be sighted (Glass testified he had changed the scope; Amanda Minchew testified Glass told Matthews to sight the rifle because he (Glass) had changed the scope; and Matthews testified Glass did not tell him that); and the time that elapsed between when Matthews borrowed the rifle on the day of the accident and the accident occurred (Matthews testified ten minutes elapsed; Amanda Minchew, 30 minutes to an hour; her deposition was then read to her for impeachment, in which she had testified that one to two hours had elapsed; she then testified at trial "it may have been" one to two hours, consistent with her deposition).

As stated, there were numerous instances of this type for the court to consider, including for the expert witnesses' testimony, in making its findings of fact. These type credibility and evidence-appraisal questions are for the district, not this, court. "When the district court is faced with testimony that may lead to more than one conclusion, its factual determinations will stand so long as they are plausible—even if we would have weighed the evidence otherwise." *Nielsen v. United States*, 976 F.2d 951, 956 (5th Cir. 1992). As

stated, on this record and under this highly deferential standard, we can not say the district court clearly erred in finding the bolt-assembly pin was not in the rifle when Matthews fired it and suffered injuries from the uncontained explosion.

**B.**

In the light of our not finding clearly erroneous the district court's missing-pin finding of fact, next at issue are: the district court's conclusion of law for the applicable LPLA scope-of-use; and its finding of fact, based on that scope-of-use, that Matthews' use of the rifle (with a missing bolt-assembly pin) was *not* reasonably anticipated by Remington. The district court did not err in its scope-of-use conclusion; and we can not say that its not-reasonably-anticipated-use finding of fact was clearly erroneous.

**1.**

For obvious reasons, "the level of generality at which a plaintiff's 'use' of a product is defined will bear directly on whether [he] satisfies the LPLA's reasonably anticipated use requirement". *Kampen*, 157 F.3d at 310. Again, a critical issue is whether Matthews' "use" of the Model 710 rifle is limited to his firing it or includes the removal of, but failure to reinstall, the bolt-assembly pin. As discussed, the district court interpreted "use" at a level of generality that included firing the rifle *without the bolt-assembly pin,* as opposed to firing it. Again, this interpretation included someone's removal of, and failure to reinstall, the bolt-assembly pin prior to Matthews' firing the rifle. And as noted, because the scope-of-use inquiry requires interpreting LPLA, our review is *de novo. See Kleinman*, 597 F.3d at 325.

A scope-of-use decision is premised on "the apparent purpose of the reasonably anticipated use requirement[:] . . . 'to express the types of product uses and misuses by a consumer that a manufacturer must take into account when he designs a product [and] drafts instructions for its use . . . in order that the product not be unreasonably dangerous.'" *Kampen*, 157 F.3d at 310-11

13

(citation and internal quotation marks omitted) (quoting John Kennedy, *A Primer on the Louisiana Products Liability Act*, 49 LA. L. REV. 565, 584 (1989)) (Kennedy was a co-drafter of LPLA.). For that LPLA action against the manufacturer of a vehicle jack, our en banc court in *Kampen* held: the scope of use included not only claimant's jacking up the vehicle, but also, while the vehicle was in that position, crawling under it. *Id.* at 312.

For the scope-of-use inquiry, *Kampen* held: "We thus define [plaintiff's] 'use' of the jack at a level of generality that will take into account the risks [the manufacturer] must (or should) have reasonably contemplated when designing the jack . . . ." *Id.* at 311. Consistent with the warnings not to do so, provided in the owner's manual and in the vehicle's spare-tire compartment, those risks were that the claimant would not only jack up the vehicle, but also, after doing so, crawl under it. *Kampen* further held: "[I]f we consider that Kampen's 'use' of the jack includes his jacking up the car and nothing else, then the question of reasonably anticipated use answers itself: a manufacturer quite reasonably anticipates his jack to be used for jacking!" *Id.* at 310. Similarly, it is obvious that firing a rifle, with all of its parts in place, is reasonably anticipated.

In reaching the holding that defendant did not reasonably anticipate this expanded use (jack-up and crawl-under), *id.* at 312, *Kampen* provided a detailed analysis of Louisiana cases interpreting LPLA's reasonably-anticipated-use element, including which conduct constituted a "use". *See id.* at 310-12. Louisiana courts have interpreted "use" to include interactions with the product prior to the claimant's injury. *See Johnson*, 701 So. 2d at 1365 (affirming jury's finding that using a saw after either claimant, or another, had removed the manufacturer's guard was not a "reasonably anticipated use"); *Delphen v. Dep't of Transp. & Dev.*, 657 So. 2d 328, 334 (La. App. 4th Cir. 1995) (holding claimant's "use" was borrowing and riding an obviously dangerous racing bicycle without obtaining additional instructions regarding use and knowing the wheel had previously become loose). As reflected in our en-banc opinion in *Kampen*,

14

our court has applied the Louisiana-state-court LPLA interpretation. *E.g.*, *Broussard v. Procter & Gamble Co.*, 517 F.3d 767, 769-70 (5th Cir. 2008) (holding "use" of heatwrap in contravention of warning not "reasonably anticipated") (citing *Kampen*, 157 F.3d at 314); *Ellis*, 258 F.3d at 337-38 (holding "reasonably anticipated use" of pecan harvester included walking between tractor and harvester to inspect harvester while running); *Hunter v. Knoll Rig & Equip. Mfg. Co.*, 70 F.3d 803, 810 (5th Cir. 1995) (holding racking pipes against a racking board in an uncommon and "obviously dangerous" manner was not a "reasonably anticipated use"); *see* LA. REV. STAT. ANN. § 9:2800.53(7) ("'Reasonably anticipated use' means a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances."); *Kampen*, 157 F.3d at 311 ("[W]e observe that 'reasonably anticipated use' is defined [in § 9:2800.53(7)] in terms of a 'use *or* handling' of the product".) (emphasis in original).

Again, the LPLA section at issue provides: "The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product *by the claimant or another person or entity*". LA. REV. STAT. ANN. § 9:2800.54(A) (emphasis added). "[U]se of the product by [Matthews] or another person" is linked, of course, to the district court's above-discussed finding of fact, which we can not say is clearly erroneous, that, "[a]t some point prior to the accident, . . . *someone* disassembled the bolt assembly and failed to reinstall the bolt assembly pin". *Matthews*, 2009 WL 2970441, at *2 (emphasis added). In the light of its scope-of-use conclusion, the district court was not required to find whether that "someone" was Matthews or another person.

As noted, in *Johnson*, the Louisiana appellate court affirmed the jury's finding that using a saw after the manufacturer's guard had been removed was not a "reasonably anticipated use". 701 So. 2d at 1365. In so doing, the court

15

found it was unclear whether the guard had been removed by the claimant or by another. *Id.* at 1362, 1364. In *Hunter*, our court found the manner in which pipes were leaned against a racking board was not reasonably anticipated. 70 F.3d at 810. In that case, it was not only the claimant's interaction with the product, but also those by other experienced workers, that resulted in the pipes being racked improperly. *Id.* at 805, 810. These decisions demonstrate, *inter alia*, that, consistent with LPLA § 9:2800.54(A) (defining "use" to include "use of the product *by the claimant or another person or entity*" (emphasis added)), "use" of a product is determined by examining overall interactions with a product—including another person's handling it.

Accordingly, "use" under LPLA includes interactions with the product by Matthews and others. The scope of the "use" included the removal of, and failure to reinstall, the bolt-assembly pin prior to Matthews' firing the rifle because, in order to be held liable under LPLA, that is the "use" Remington had to have "reasonably anticipated" ("expect[ed]"). *See* LA. REV. STAT. ANN. § 9:2800.53(7) ("'Reasonably anticipated use' means a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances.").

### 2.

Therefore, in the light of this scope-of-use, at issue is whether it was "reasonably anticipated" by Remington that someone would fail to reinstall the bolt-assembly pin and that the rifle would be fired in that condition. As discussed, the establishment of each LPLA element is a question of fact, reviewed for clear error. *Ellis*, 258 F.3d at 331-32; *Johnson*, 701 So. 2d at 1366.

Again, "'[r]easonably anticipated use' means a use or handling of a product that the product's manufacturer should reasonably *expect* of an ordinary person in the same or similar circumstances". LA. REV. STAT. ANN. § 9:2800.53(7) (emphasis added). "This objective inquiry requires us to ascertain what uses of its product the manufacturer should have reasonably *expected at the time of*

*manufacture." Kampen*, 157 F.3d at 309 (emphasis added) (citing *Myers v. Am. Seating Co.*, 637 So. 2d 771, 775 (La. App. 1st Cir. 1994)). Accordingly, at issue is whether the district court clearly erred by finding that Remington, at the time of manufacture, should *not* have reasonably expected Matthews' "use": firing a Model 710 rifle after someone had removed, but failed to reinstall, the bolt-assembly pin. *See Butz*, 762 So. 2d at 1218; *Hunter*, 70 F.3d at 806-07, 810.

"'[R]easonably anticipated use' is more restrictive than the broader, [pre-LPLA] standard of 'normal use'", and it does not suggest manufacturer liability "for every conceivable foreseeable use of a product". *Delphen*, 657 So. 2d at 333-34; *see also Lockart v. Kobe Steel Ltd. Constr. Mach. Div.*, 989 F.2d 864, 868 (5th Cir. 1993). "The LPLA's 'reasonably anticipated use' standard should be contrasted with the pre-LPLA 'normal use' standard; 'normal use' included 'all intended uses, as well as all reasonably foreseeable uses and misuses of the product.'" *Kampen*, 157 F.3d at 309 (citing *Hale Farms, Inc. v. Am. Cyanamid Co.*, 580 So. 2d 684, 688 (La. App. 2d Cir. 1991)). "'Normal use' also included 'reasonably foreseeable misuse that is contrary to the manufacturer's instructions.'" *Id.* (emphasis removed) (citing *Hale Farms*, 580 So. 2d at 688).

Under LPLA, whether a use is reasonably anticipated is an objective standard ascertained from the manufacturer's viewpoint at the time of manufacture. *Payne v. Gardner*, — So. 3d —, 2011 WL 635571, at *2 (La. 18 Feb. 2011); *Green v. BDI Pharm.*, 803 So. 2d 68, 75 (La. App. 2d Cir. 2001); *Hunter*, 70 F.3d at 809 n.7; *Daigle v. Audi of Am., Inc.*, 598 So. 2d 1304, 1307 (La. App. 3d Cir. 1992) (quotation omitted). "It is clear that by adopting the reasonably anticipated use standard, the Louisiana Legislature intended to narrow the range of product uses for which a manufacturer would be responsible." *Kampen*, 157 F.3d at 309 (citing *Delphen*, 657 So. 2d at 333; *Myers*, 637 So. 2d at 775).

17

We can not say that the district court clearly erred in finding that Remington should not have reasonably anticipated (reasonably expected) the rifle to be fired after someone had removed, but failed to reinstall, the bolt-assembly pin. This is evidenced by the instructions in Remington's Model 710 owner's manual to reinstall the bolt-assembly pin when reassembling the bolt assembly. Of course, it was "reasonably foreseeable" that a user might drop the bolt-assembly pin during reassembly, as evidenced by the instruction from Remington to its assembly workers to keep a finger beneath the bolt-assembly-pin hole during the initial assembly; however, that is *not* the LPLA standard. The standard is: at the time of manufacture, how did the manufacturer reasonably expect its product to be used by an ordinary person.

"[T]he LPLA requires a link between *damages* and *reasonably anticipated use*. . . . [I]f damages are linked to a product misuse (i.e., one that is not reasonably anticipated), then those damages are not recoverable under the Act". *Kampen*, 157 F.3d at 316; *see also Payne*, 2011 WL 635571, at *2. Here, the damages incurred by Matthews are directly caused by his firing the rifle after someone had removed the bolt-assembly pin and failed to reinstall it. For the reasons that follow, and in the light of the trial evidence, we can not say that the district court clearly erred in finding that such "use" was *not* "reasonably anticipated" by Remington.

Matthews failed to prove Remington, at the time of manufacture of the rifle at issue, was aware of a single other incident where a Model 710 rifle, or any rifle using a similar two-piece bolt assembly, was fired without a properly installed and functioning bolt-assembly pin. The district court found:

> Remington anticipated that a user would disassemble the Model 710 bolt assembly for cleaning and remove the bolt assembly pin, but Mr. and Mrs. Matthews have not presented persuasive evidence that Remington also should have anticipated that users would fail to reinstall the bolt assembly pin. *Both lay and expert witnesses testified that an ordinary firearm user knows*

18

> *and understands that reassembly of a firearm with all*
> *its parts is critical to safe operation.* The Court,
> therefore, finds that Remington was entitled to expect
> that an ordinary user would reassemble the rifle with
> all its parts, absent special circumstances not present
> in this case.

*Matthews*, 2009 WL 2970441, at \*4 (emphasis added).

Acknowledging again that the district court is in a superior position to appraise and weigh the evidence, "the force and effect of the testimony, considered as a whole", does not convince us "that the findings are so against the great preponderance of the credible testimony that they do not reflect or represent the truth and right of the case". *Mumblow*, 401 F.3d at 622 (citation omitted). Under LPLA, what a manufacturer should reasonably anticipate is determined by how the manufacturer *expected* the product to be used by an ordinary person. Again, we can not say the district court clearly erred by finding Remington should *not* have expected a Model 710 rifle to be fired after someone had removed, but failed to reinstall, the bolt-assembly pin.[2]

---

[2] The dissent does not challenge the two above-discussed critical findings of fact that we can not say are clearly erroneous: the bolt-assembly pin was not in the rifle when Matthews fired it; and Remington should not have expected the rifle to be fired after *someone* had removed, but failed to reinstall, that pin. (Therefore, the dissent's statements of fact at 2-3, including about the sale of extra bolt-assembly pins, are of no moment.) The dissent instead challenges only our holding, on *de novo* review, that the applicable LPLA reasonably-anticipated scope-of-use was not just Matthews' firing the rifle; it was his firing it with the missing bolt-assembly pin.

In advancing a theory not urged by Matthews, the dissent maintains the missing-pin aspect can not, as a matter of law, be attributed to Matthews, akin to his being an innocent bystander. As discussed *supra*, however, the district court did not find Matthews was not the "someone" who removed, and failed to reinstall, the pin because it was not necessary to do so. Therefore, the dissent repeatedly errs in stating someone other than Matthews did so.

In any event, who did so is irrelevant; what is relevant is the use Remington could "reasonably anticipate[] . . . by the claimant [Matthews] or another person or entity". LA. REV. STAT. ANN. § 9:2800.54(A). In short, for the reasons presented *supra*, it matters not when the pin was removed and not re-installed and, assuming he was not the person who did so, whether it was outside Matthews' presence. Again, what is relevant, pursuant to the plain language of the LPLA, is the reasonably anticipated use of the product, whether by Matthews or another, including the reason for the missing bolt-assembly pin. Therefore, the dissent's fundamental error is asserting that the applicable scope-of-use should be limited to Matthews' firing the rifle (or, as the dissent erroneously phrases it: "*his* reasonably anticipated use",

19

## III.

For the foregoing reasons, the judgment is AFFIRMED.

---

**Dissent** at 1 (emphasis added); and "his own personal use", *id*. at 10).  That analysis writes "or another person or entity" out of the LPLA and converts it from imposing product, to imposing absolute, liability.

DENNIS, Circuit Judge, dissenting.

I respectfully dissent. The undisputed, concrete facts of this fully tried case show that the damage to the claimant, Jerry Matthews, arose from his own use of the rifle to shoot at a target, a use that an objective rifle manufacturer should reasonably expect of an ordinary person in the same or similar circumstances as Matthews'. Matthews did not allege or attempt to show that his damage arose from the use of the rifle by another person or entity. Thus, both the district court and the majority of this panel erred in misinterpreting and misapplying the Louisiana Products Liability Act (LPLA or "the Act") as if it required Matthews to show that his damage arose from a reasonably expected use of the rifle by another person or entity. The LPLA does not place such an additional and greater burden upon a claimant at the threshold reasonably-anticipated-use stage of a products liability case. Therefore, their dismissal of Matthews' claim on the ground that he failed to demonstrate that his damages arose from his reasonably anticipated use of the rifle was legal error. It may be that Matthews' case ultimately might have failed on the merits of his design and warning claims, but under the LPLA he should not have been poured out of court at the threshold reasonably-anticipated-use stage, because he obviously used the rifle as a manufacturer should reasonably have anticipated, and did not use the rifle in an irrational or abnormal way.

I.

Matthews was severely injured by the backward explosion of the Remington rifle as he tried to fire it at a target. This model of Remington rifle has a dangerous characteristic that Remington did not warn users about either in the owners' manual or on the rifle itself, *viz.*, when the pin holding its two-piece bolt assembly together is missing or defective, the rifle can explode in the face of a shooter, although its bolt assembly may appear to be working properly when a user inserts a rifle shell and prepares to pull the

21

trigger.[1] Matthews was justifiably not aware of this dangerous characteristic of this model of Remington rifle; and he was also thus not aware that the bolt assembly pin was missing from the particular rifle he was using.[2] These non-apparent dangers fortuitously met in an explosion, blinding Matthews' right eye and causing him brain damage and other injuries.

The district court specifically found that Matthews' use of the rifle was not obviously dangerous; that Matthews was able to rotate the bolt handle into what appeared to be the closed position prior to pulling the trigger; and *that both he and an ordinary user would have assumed that the rifle was safe to fire at that point.* Consequently, in my opinion, the record clearly shows that Matthews carried his initial threshold burden to show that his damages arose from his own use of the rifle to shoot at a target, a use that any objective manufacturer reasonably should have anticipated; and that Matthews, therefore, was entitled to have the district court proceed to adjudicate his unreasonably dangerous product design claim and his unreasonably dangerous failure to warn claim, on their merits, upon the evidence adduced at trial.[3]

---

[1] It is undisputed that Remington instructed or warned its factory workers to place a finger under the bolt assembly pin hole to prevent the pin from slipping out and becoming lost when assembling the rifle but that Remington did not communicate this instruction or warning to owners or users of the rifles.

[2] The district court found that the pin was missing rather than broken or defective. Matthews continues to argue that the accident was caused by a defective pin, but the district court's ruling that Matthews' use of the rifle was not one that a manufacturer reasonably should anticipate was erroneous as a matter of law, regardless of whether the accident resulted from a missing or a defective bolt assembly pin.

[3] At trial, it was established that Remington was well aware of the dangerous characteristic of this rifle model, but, nevertheless, distributed 500,000 of them without designing out or warning users of this dangerous characteristic. Remington's witness, Mike Keeney, a staff engineer at Remington, testified that the bolt-assembly pins could be lost, and that Remington had sold 145 additional bolt-assembly pins to stocking dealers, factory service representatives, warranty repair centers, or customers who called Remington directly. Matthews also introduced experts' opinions and other evidence to show that the rifle was unreasonably dangerous in design and that Remington had failed to provide an adequate

22

The district court did not proceed in that order, however, but instead improperly injected into its "reasonably anticipated use" threshold inquiry an additional anomalous factual issue that should have been considered only in the merits design and warning claims part of the case, or in a subsequent comparative fault inquiry — *viz.*, whether Matthews' damages were proximately caused by an unknown previous user's failure to replace the bolt assembly pin upon reassembly of the rifle. After deciding that the accident happened because some unknown person had left the pin out, rather than because of a defective pin, the court then decreed that Remington was legally entitled to presume that no user of its rifles would ever advertently or inadvertently leave such a pin out. Having established this legal presumption, although there is no warrant in the record or basis in the LPLA or other law for it, the district court rejected Matthews' claims because "Matthews' use of the rifle in an out-of-battery condition was not reasonably anticipated." *Matthews v. Remington Arms Co., Inc.*, No. 07-1392, 2009 WL 2970441, at *4 (W.D. La. Nov. 23, 2009). To reach this conclusion, the district court, in my view, incorrectly interpreted and applied the LPLA's reasonably anticipated use requirement.

Under the plain language of the Act, a plaintiff asserting a products liability action against a manufacturer has a threshold burden of showing that his damages arose from a reasonably anticipated use of the product. *See* La. Rev. Stat. § 9:2800.54(D); *Kampen v. Am. Isuzu Motors, Inc.*, 157 F.3d 306, 314 (5th Cir. 1998) (en banc). The LPLA defines a reasonably anticipated use as "a use or handling of the product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances."

---

warning of the rifle's dangerous characteristic. These issues were vigorously contested by Remington with expert testimony and other evidence. After trial, however, the district court did not rule on either of these issues or theories of recovery but instead inquired into whether a third person's omission of the bolt assembly pin made the rifle more dangerous than Remington subjectively expected it to be.

23

La. Rev. Stat. § 9:2800.53(7). When the claimant asserts that his damages arose from a reasonably anticipated use of the product by the claimant himself, "in the same or similar circumstances" plainly refers to the same or similar circumstances as the claimant's use. *Id.; see also id.* § 9:2800.54(A). This is an "objective inquiry," requiring a court to ascertain whether the use of the product, from which the plaintiff's damages arose, is a use that a manufacturer such as the defendant should have reasonably expected at the time of manufacture. *Kampen*, 157 F.3d at 309.

Applying the objective inquiry to the undisputed facts, it is self-evident that Matthews' damages arose from a use or handling of the rifle that a manufacturer such as Remington should have reasonably expected at the time of the manufacture. Matthews was using the rifle to shoot at a target while sighting in a new telescope on the rifle when his damages arose. This use obviously falls within the core purpose for which Remington designed and made the rifle, *viz.*, to fire a bullet at a target. Moreover, Matthews was found by the district court to have used the rifle as an ordinary user would have under the circumstances; he was not found to be negligent or at fault in his use of the rifle. Thus, Remington, as a rifle manufacturer, reasonably should have anticipated that the rifle would be used just as Matthews did for that purpose.

The LPLA does not require a claimant at the threshold stage to prove that his damages were also proximately caused by a characteristic of the product that renders the product unreasonably dangerous. Nor does it require a claimant at the threshold stage to prove that a third person's conduct was not a contributing or proximate cause of his damages. Those are additional burdens that a claimant must face only if he satisfies the initial threshold burden of showing that his damages arose from his use of the product that a manufacturer reasonably should have anticipated. Further, those are issues that the district court should have given plenary consideration to as part of a

24

full merits trial inquiry into unsafe design, inadequate warning, and/or
comparative fault, and should not have adverted to at the threshold
reasonably anticipated-use stage of the case.

The district court, in my view, did not correctly interpret and apply the
threshold objective reasonably anticipated use inquiry in the present case. The
district court, instead, inquired into whether Remington subjectively expected
that some user other than Matthews would have negligently or inadvertently
failed to replace the assembly bolt pin during the process of cleaning and
reassembling the rifle. This is quite different from the objective inquiry
required by the Act, of whether Matthews' damages arose from a use of the
product that the manufacturer reasonably should have anticipated. Moreover,
the district court formulated an anomalous rule of law to answer its
subjective, rather than objective, inquiry that is foreign to and not authorized
by the Act. Thus, the district court held that Remington *was entitled —
evidently as a matter of law — to expect that no ordinary user would
inadvertently leave the bolt assembly pin out when reassembling the rifle after
disassembling it for cleaning.* Then the court went on to find that Matthews
had not presented persuasive evidence that Remington should have
anticipated that any user would fail to reinstall the bolt assembly pin. Thus,
the court placed another impossible legal burden on Matthews that is not
authorized by the LPLA or by any law. How could Matthews ever adduce
sufficient evidence to overcome the legal presumption erected by the court that
Remington is entitled to presume that no rifle cleaner will ever inadvertently
leave out a pin when reassembling a rifle? Specifically, the district court's
rationale was that:

> Remington anticipated that a user would disassemble the Model
> 710 bolt assembly for cleaning and remove the bolt assembly pin,
> but Mr. and Mrs. Matthews have not presented persuasive
> evidence that Remington also should have anticipated that users
> would fail to reinstall the bolt assembly pin. Both lay and expert

25

witnesses testified that an ordinary firearm user knows and understands that reassembly of a firearm with all its parts is critical to safe operation. The Court, therefore, finds that *Remington was entitled to expect that an ordinary user would reassemble the rifle with all its parts, absent special circumstances not present in this case.*

*Matthews,* 2009 WL 297044, at *4 (emphasis added).

Therefore, in my view, the district court committed several clear legal errors in interpreting and applying the LPLA by: (1) failing to recognize that Matthews had carried his threshold burden of showing that his damages arose from his own use of the rifle and that his use was one that a manufacturer reasonably should have anticipated; (2) failing to proceed to consider and decide the merits issues of whether the rifle product was unreasonably dangerous in design or whether an adequate warning about the product's dangerous characteristic was given; (3) undertaking, at the threshold stage of the case, an anomalous inquiry into whether the accident was proximately caused by a defective pin or by an unknown previous user's failure to properly replace the pin upon reassembling the rifle; (4) establishing a legal presumption that Remington is entitled to presume that no user of its rifles will ever fail to replace a bolt assembly pin, although it is undisputed that the rifle can give the appearance of operating properly without such a pin; and (5) rejecting Matthews' claims because he failed to adduce sufficient contrary evidence of Remington's subjective expectations to overcome this apparently irrebuttable legal presumption.

## II.

The majority of this panel not only fails to correct the district court's erroneous statutory construction and erroneous legal rule-making, but, in an attempt to buttress its own decision, expressly adopts a seriously mistaken interpretation of the LPLA and misapplies this court's standards of appellate review. I will discuss the majority's errors in turn.

The majority fails to properly apply the clear and unambiguous provisions of the LPLA as written to the undisputed concrete facts of this case, without further unnecessary judicial interpretation, as required by Louisiana Civil Code article 9. When a claimant's damage is proximately caused by an unreasonably dangerous characteristic of a product, the LPLA, Louisiana Revised Statute § 9:2800.54(A), mandates that the manufacturer shall be liable to the claimant in two different situations: (1) when such damage arose from a reasonably anticipated use of the product by "the claimant," *id.*; and (2) when such damage arose from a reasonably anticipated use of the product by "another person or entity," *id.* In this case, Jerry Matthews, "the claimant," asserts that his injuries arose from his own reasonably anticipated use of the product, a rifle, by using it to attempt to shoot at a target. He does not claim that his damage arose from a use of the rifle by "another person or entity." *Id.* Thus, the second type of situation or action provided for by § 9:2800.54(A) does not apply to and is irrelevant to this case.

The majority stretches and distorts the statutory words, "use of the product by . . . another person or entity," to have them apply to the unknown person whom the district court found had left out the missing pin. But the legislature clearly did not intend for them to have that meaning or interpretation. Those words plainly were meant to apply when a claimant's damage arises from a use of a product by another person or entity: for example, when an innocent bystander is injured by a characteristic of a product such as a lawn mower, automobile or other mechanical device while it is being used by another person or entity in a manner that a manufacturer should reasonably expect of an ordinary person in the same or similar circumstances as the user. The majority's interpretation and application of the statutory words, "use of the product by . . . another person or entity," differently from the plain, straightforward manner used and intended by the legislature, is therefore unwarranted; to apply those words as the majority

27

does here distorts the "clear and unambiguous" words of the law, which should be applied "as written" to the undisputed concrete facts, without "further interpretation in search of the intent of the legislature." La. Civ. Code art. 9. Matthews alleged and sought to prove that his damage arose from his own use of the rifle, not from the use of the rifle by another person or entity. Thus, the only reasonably anticipated use question presented is whether the use of the rifle by Matthews, the claimant, was a reasonably anticipated use. This case fits squarely within the plainly relevant LPLA legislated rules, *viz.*, the reasonably anticipated use definition at § 9:2800.53(7) and the claimant's assertion that his injuries arose from his own use of the rifle, La. Rev. Stat. § 9:2800.54(A); therefore, the majority is not authorized to formulate a new rule to decide the case by resorting to its own judicial conceptions of "equity, . . . justice, reason, and prevailing usages." La. Civ. Code art. 4.

The LPLA defines "reasonably anticipated use" as "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." *Id.* § 9:2800.53(7). This is the only definition of "reasonably anticipated use" in the LPLA. Accordingly, it must be applied faithfully to the relevant use or handling of a product in each particular case. Because Matthews asserted a claim that his injuries arose from his own use or handling of the Remington rifle, the majority was required by the LPLA to decide whether Matthews' use of the rifle was one that the manufacturer should reasonably expect of an ordinary person in the same or similar circumstances as Matthews. Had the majority done so, they would have been bound to conclude that Matthews' use or handling of the rifle was what a manufacturer should expect of an ordinary person in the same or similar circumstances as the claimant. In fact, it is undisputed that Matthews is an ordinary person who had no knowledge of the dangerous characteristic, that the rifle might backfire if its assembly pin had been misplaced or broken. Further, it bears repeating that it is undisputed

28

that Remington did not provide any warning of this danger either in its owner's manual or on the rifle itself. Moreover, there was nothing in the way Matthews used or handled the rifle that was inconsistent with the use or handling of a product that a manufacturer should reasonably expect of an ordinary person in the same of similar circumstances. As even the district court found: "The Court . . . concludes that Mr. Matthews was able to rotate the bolt handle into what appeared to be the closed position prior to pulling the trigger. The Court finds that both he and an ordinary user would have assumed that the rifle was safe to fire at that point, even if the bolt handle had previously been difficult to operate." *Matthews,* 2009 WL 2970441, at *4.

As the majority acknowledges, the district court's conclusions about interpretation of the LPLA are legal conclusions, which are reviewed de novo. *Great Am. Ins. Co. v. AFS/IBEX Fin. Servs., Inc.,* 612 F.3d 800, 809 (5th Cir. 2010) ("This court reviews a district court's interpretation of a state statute de novo."); *see also Murkeldove v. Astrue,* 635 F.3d 784, 790 (5th Cir. 2011) ("Because the district court's determination turns on its interpretation of the [relevant statute] and statutory interpretations are conclusions of law, we review the district court's interpretation *de novo.*"). Accordingly, a determination of the meaning of "reasonably anticipated use" under the LPLA is a legal conclusion subject to de novo review.

The majority alleges and argues that because someone, unknown to Matthews, removed the bolt-assembly pin from the rifle before Matthews fired it and was injured, Matthews' use of the rifle should not have been reasonably anticipated by Remington. The majority's reasoning depends on the premise that the LPLA requires a claimant to prove not only that his use was reasonably anticipated, but also that all prior users' uses of the product were reasonably anticipated. That interpretation of the clear and unambiguous words of the law is incorrect. If the claimant asserts that he was the user of the product when he was injured, as Matthews does, the LPLA requires that

29

No. 09-31217

he prove only that his own personal use was reasonably anticipated in order to fulfill the reasonably anticipated use requirement.[4]

As the majority correctly notes, the issue of whether Matthews' use of the product was a reasonably anticipated use is merely a threshold requirement; once he meets this requirement, he still has the burden of proving that his injury was proximately caused by an unreasonably dangerous characteristic of the product. La. Rev. Stat. § 9:2800.54(B). In this case, Matthews cannot succeed on the theory that the rifle was unreasonably dangerous in construction or composition, per § 9:2800.55, because the district court found it did not contain such a defect when it left the manufacturer's control and that finding of fact appears to be supported by the evidence. However, the district court did not reach two other actions or theories of recovery asserted and supported with substantial evidence by Matthews. First, he contends, and introduced substantial evidence to prove, not only that the manufacturer should have reasonably anticipated his use of the rifle, but also that the rifle was unreasonably dangerous in design, per § 9:2800.56, because there was an alternative design available "that was capable of preventing [Matthews'] damage" and that "the likelihood that the [rifle]'s design would cause [Matthews'] damage and the gravity of that damage outweighed the burden on [Remington] of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the

---

[4] Of course, if a claimant contends that he was injured by another person's or entity's use of the product he must prove that the other's use was reasonably anticipated. Here, Matthews contends and has clearly shown that his injuries arose from his own use of the rifle to shoot at a target and that that use reasonably should have been anticipated by the manufacturer. He did not contend that he was injured by the use of the product by another person or entity. Remington is not entitled to amend Matthews' pleadings or presentation of his case so as to require him to prove that his injuries arose from a reasonably anticipated use of the rifle by another person or entity.

30

[rifle]," *id.* Second, he contends that Remington provided an inadequate warning, per § 9:2800.57, regarding the possibility of the rifle exploding when the bolt assembly pin was not properly installed, especially where the rifle would give a user no indication that the pin was missing. These two complex "design" and "warning" inquiries are quite distinguishable from the reasonably anticipated use test which is a simpler, more straightforward threshold hurdle. Obviously, the reasonably anticipated use test is not designed to take the place of these more complicated inquiries. The reasonably anticipated use test is designed merely to winnow out claims based on uses that would not be rational or sensible for a manufacturer to expect of a claimant, such as "us[ing] a soft drink bottle for a hammer, . . . attempt[ing] to drive [an] automobile across water[,] or . . . pour[ing] perfume on a candle to scent it." John Kennedy, *A Primer on the Louisiana Products Liability Act*, 49 La. L. Rev. 565, 586 & n.110 (1989) (citing as a source of law for the LPLA, the Model Uniform Products Liability Act § 102(G) and comment (G), and listing examples of uses which the "reasonably anticipated use" element is meant to exclude); *see also* Model Uniform Products Liability Act § 102(G) (defining "[r]easonably anticipated conduct" as "the conduct which would be expected of an ordinary reasonably prudent person who is likely to use the product in the same or similar circumstance"); *id.* cmt. (G) ("The [Model Uniform Products Liability] Act's reliance on the concept of 'reasonably anticipated conduct' . . . helps to ensure that the price of products is not affected by the liability insurance costs that would spring from providing coverage for *abnormal product use.*" (emphasis added)). In contrast, Matthews' use of the rifle was certainly one that should have been reasonably anticipated by any objective rifle manufacturer: Matthews simply attempted to fire the rifle at a target.

No. 09-31217

Moreover, the caselaw confirms that the majority's interpretation of "reasonably anticipated use" is incorrect. In the cases cited by the majority where the plaintiff's use was held not to be a reasonably anticipated use, the plaintiffs had *personally* used the products that injured them in a manner that was held to not be reasonably anticipated. *See Broussard v. Procter & Gamble Co.*, 517 F.3d 767, 769-70 (5th Cir. 2008) (plaintiff's use of heatwrap pain relief product in manner contrary to warnings was not a reasonably anticipated use); *Kampen*, 157 F.3d at 311-12 (5th Cir. 1998) (en banc) (plaintiff's use of jack to raise vehicle and crawling under vehicle was not a reasonably anticipated use); *Hunter v. Knoll Rig & Equip. Mfg. Co.*, 70 F.3d 803, 805-10 (5th Cir. 1995) (decedent's stacking of racking pipes against a racking board on an oil derrick so that the pipes leaned toward rather than away from the mast of the derrick, where he was responsible for alerting coworkers of any need to correct the lean, and where industry practice is to not permit such a lean, was not a reasonably anticipated use); *Johnson v. Black & Decker U.S., Inc.*, 701 So.2d 1360, 1364-65 (La. App. 2d Cir. 1997) (plaintiff's use of saw, after guard was removed by plaintiff, "either by [plaintiff] himself or with his consent," was not a reasonably anticipated use); *Delphen v. Dep't of Transp. & Dev.*, 657 So.2d 328, 333-34 (La. App. 4th Cir. 1995) (plaintiff's borrowing and riding obviously dangerous bicycle across large bridge was not a reasonably anticipated use). By contrast, the majority in this case effectively penalizes Matthews at the threshold of the case for the actions of an unknown third party in removing the bolt-assembly pin from the rifle without Matthews' knowledge.

Furthermore, even if it could be assumed by some stretch that Matthews was slightly negligent in not checking the rifle's internal parts before firing the weapon, or in not taking it to the shop after it failed to fire the first shell,

32

No. 09-31217

his use would still constitute a "reasonably anticipated use," because no manufacturer should expect this extremely high degree of knowledge or caution from an unwarned ordinary user, where his use of the product is not obviously dangerous. This court, sitting en banc, has made clear that there are circumstances where a plaintiff's use of a product, even if negligent, still constitutes a reasonably anticipated use:

> A plaintiff's negligent conduct *which does not remove his use of the product from the realm of reasonably anticipated uses* may nevertheless contribute to cause his injuries. *Such negligence will lessen a plaintiff's recovery without barring his right to recover altogether.* Suppose, for example, that [the plaintiff] had used the jack only to change a tire and the jack had collapsed; the manufacturer had provided no adequate instructions regarding the use of the jack, and the correct manner of use was not obvious; the collapse occurred partly as a result of [the plaintiff's] negligent failure to fit the lifting arm of the jack into a special notch and partly as a result of some unrelated defect in the jack's composition. *In this example, [the plaintiff] used the jack to change a tire, but physically manipulated the jack in an improper manner that was not specifically warned against nor obviously dangerous.* We submit that this hypothetical negligent use would be "reasonably anticipated"; the manufacturer would be liable and damages apportioned by comparative fault.

*Kampen*, 157 F.3d at 316 (second and third emphases added). Matthews' use of the rifle is like the plaintiff's use of the jack in the above hypothetical example posed by the *Kampen* en banc majority opinion. Like that hypothetical plaintiff, Matthews used the product at issue for the very purpose that it was intended for. The hypothetical plaintiff used the jack to change a tire, and Matthews used the rifle to shoot at a target. As with the hypothetical jack user, the danger in using the product, the rifle, "was not specifically warned against nor obviously dangerous." The owner's manual did not warn of the dangerous possibility of the rifle causing a disastrous

33

No. 09-31217

uncontained explosion when the bolt-assembly pin was missing. Nor was the danger of firing the rifle obvious, as the district court so found,[5] because Remington had designed the rifle so that the bolt handle would still rotate downwards into what appeared to be the closed and locked position regardless of whether the bolt-assembly pin was inside so that Matthews would not have been able to tell that the bolt-assembly pin was missing. Thus, Matthews' use of the rifle, like the hypothetical plaintiff's use of the jack in *Kampen*, was a reasonably anticipated use.

Thus, I respectfully but emphatically disagree with the majority's unorthodox interpretation of the LPLA, which in effect (1) makes the LPLA's definition of "reasonably anticipated use" become a useless appendage whenever a third person's prior use may have affected the product, although the claimant alleges and proves that his damage arose from his own use of the product, which the manufacturer reasonably should have anticipated; (2) distorts the LPLA's "use of the product by . . . another person or entity" proviso (that was intended to expand, not narrow, protections for victims of unsafe products) into an additional manufacturer's defense not explicitly legislated or intended; (3) creates an additional hurdle and burden for claimants that the legislature did not expressly provide for; and (4) is contrary to this court's en banc interpretation of the LPLA in *Kampen*, because it makes the reasonably anticipated use of the product by another person or

---

[5] Specifically, the district court explained: "The Court concludes that, if Mr. Matthews stated that the 'bolt would not lock,' i.e., he meant that he had difficulty operating the action of the rifle, i.e., difficulty operating the bolt handle. The Court further concludes that Mr. Matthews was able to rotate the bolt handle into what appeared to be the closed position prior to pulling the trigger. The Court finds that both he and an ordinary user would have assumed that the rifle was safe to fire at that point, even if the bolt handle had previously been difficult to operate. Accordingly, the Court does not find that Mr. Matthews' use of the rifle was obviously dangerous." *Matthews*, 2009 WL 2970441, at *4.

34

No. 09-31217

entity proviso "do the work that comparative fault is intended to do" under Louisiana law. *See Kampen*, 157 F.3d at 316 (citing, inter alia, *Bell v. Jet Wheel Blast Div. of Ervin Indus.*, 462 So.2d 166 (La. 1985)) ("[C]omparative fault" still has a place in "Louisiana products liability law" because "[a] plaintiff's negligent conduct which does not remove his use of the product from the realm of reasonably anticipated uses may nevertheless contribute to cause his injuries. Such negligence will lessen a plaintiff's recovery without barring his right to recover altogether."); *see also Bell*, 462 So.2d at 170 (explaining that in a negligence action, "a plaintiff's claim for damages [cannot] be barred totally because of his negligence. At most his claim may be reduced in proportion to his fault.").

Because Matthews proved that his use of the rifle was not an irrational or unanticipated use, but rather the reasonably anticipated core use of shooting the rifle at a target, he satisfied the reasonably anticipated use requirement, and was entitled to have the district court consider and decide whether he had proven either one of his two actions, *viz.*, that the rifle is unreasonably dangerous in design as provided in § 9:2800.56, or unreasonably dangerous because an adequate warning about the product was not given, as provided in § 9:2800.57. In proving that a characteristic of the product renders it unreasonably dangerous under § 9:2800.56 or § 9:2800.57, Matthews must prove that the characteristic "exist[ed] at the time the product left the control of its manufacturer or result[s] from a reasonably anticipated alteration or modification of the product." La. Rev. Stat. § 9:2800.54(c). Matthews conceivably may have proved that the rifle's characteristics were unreasonably dangerous in design or that they required an adequate warning about the danger, and that these dangers existed when the product rifle left its manufacturer's control. *See id.* §§ 9:2800.56 and 2800.57.

No. 09-31217

The district court did not consider or decide Matthews' actions based on §§ 9:2800.56 and 9:2800.57, because it erred as a matter of law by applying the wrong definition of "reasonably anticipated use by the claimant," and thus incorrectly held that he had not met this requirement. Because the evidence demonstrates clearly that Matthews was free of any fault in his handling and use of the rifle and that he handled and used the rifle in a manner that the manufacturer should reasonably expect of an ordinary person in the same or similar circumstances, the district court's judgment should be reversed and the case should be remanded to the district court to consider and rule upon Matthews' actions asserting that the rifle is unreasonably dangerous in design as provided in § 9:2800.56, or that the rifle is unreasonably dangerous because an adequate warning about the product was not provided as required in § 9:2800.57.

36

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JUN 1 3 2011


TONY R. MOORE, CLERK
BY _____
                    DEPUTY
**LYLE W. CAYCE**
**CLERK**

## *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

June 09, 2011

Mr. Tony R. Moore
Western District of Louisiana, Monroe
United States District Court
300 Fannin Street
Suite 1167
Shreveport, LA 71101-0000

No. 09-31217,
Jerry Matthews, et al v. Remington Arms Co., Inc.
USDC No. 3:07-CV-1392

Enclosed, for the Western District of Louisiana, Monroe only, is a copy of the judgment issued as the mandate.

Enclosed, for the Western District of Louisiana, Monroe only, is a copy of the court's opinion.

Record and exhibits to be returned.

The electronic copy of the record will be recycled.

Sincerely,

LYLE W. CAYCE, Clerk

By: _____
Dantrell Johnson
Dantrell L. Johnson, Deputy Clerk
504-310-7689

cc: (letter only)
    Honorable Robert G. James
    Mr. Addison Kennon Goff, IV
    Ms. Shelley A. Goff
    Mr. David H. Nelson
    Ms. Catherine Basque Weiler
    Mr. Dale Gene Wills

P.S. to Judge James: A copy of the opinion was sent to your office via email the day it was filed.